UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NIRAJ BHANDARI,<br><br>             Petitioner(s),<br><br>   v.<br><br>PAMELA BONDI, et al.,<br><br>             Respondent(s). | CASE NO. C25-2747-KKE<br><br>ORDER ON HABEAS PETITION |

      Petitioner Niraj Bhandari is a citizen and national of Nepal detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Bhandari was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") in January 2025 and has been detained since. After an immigration judge affirmed an asylum officer's negative credible fear finding, Bhandari was ordered removed on April 15, 2025. Having been detained for over eight months since his order of removal became final, Bhandari now seeks relief from this Court to: (1) order his release from immigration detention, (2) prevent his re-detention without a hearing, (3) prevent removal to a third country "without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings", and (4) bar removal to an unknown third country. For the reasons stated below, the Court will grant Bhandari's habeas petition in part.

# I. BACKGROUND

### A. Petitioner Bhandari

Petitioner Niraj Bhandari is a citizen and national of Nepal who, on January 15, 2025, came to the United States seeking asylum. Dkt. No. 5 at 5, Dkt. No. 10-1 at 3. Upon entry, Bhandari was taken into immigration custody, and has been detained since then. Dkt. No. 5 at 5, Dkt. No. 10-1 at 3–4. In February 2025, Bhandari was transferred to the Northwest Immigrant Processing Center ("NWIPC") in Tacoma, Washington. *Id.* On April 2, 2025, Bhandari participated in a credible fear interview with a United States Citizenship and Immigration Service ("USCIS") Asylum Officer ("AO") who determined he did not establish a credible fear of return to Nepal. Dkt. No. 5 at 6. On April 15, 2025, an immigration judge affirmed the AO's negative credible fear finding, and Bhandari was ordered removed. Dkt. No. 5 at 6, Dkt. No. 9 ¶ 7. That immigration order provides:

> IT IS HEREBY ORDERED THAT: The DHS credible fear determination is AFFIRMED, and the case is returned to DHS for removal of the Applicant. … This is a final order. There is no appeal from this decision.

Dkt. No. 10-2 at 3. Sometime during the year that Bhandari has been detained in the United States, his father, who remained in Nepal, was killed. Dkt. No. 5 at 6. The parties agree that Bhandari has no criminal history. Dkt. No. 5 at 17, Dkt. No. 9 ¶ 4, Dkt. No.10-1 at 3.

Deportation Officer Brandon Curran, who declares under penalty of perjury that he is familiar with the facts of Bhandari's case and immigration status, asserts that on October 21, 2025, "a travel document was received by ICE [Enforcement and Removal Operations ("ERO")]" but that it expired before ERO could effectuate his removal. Dkt. No. 9 ¶ 12. Consistent with ERO's actual failure to effectuate his removal, Bhandari asserts that on October 26, 2025, he and other Nepalese detainees at NWIPC met with a deportation officer who informed them that Nepal was not issuing travel documents and had not done so for the "at least two months." Dkt. No. 5 at 7.

B.  **Statutory Background**

   1.  Expedited removal of noncitizens

The Immigration and Nationality Act ("INA") establishes a comprehensive immigration scheme, governing "'how persons are admitted to, and removed from, the United States.'" *Campos-Chaves v. Garland*, 602 U.S. 447, 451, (2024) (quoting *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021)). Relevant here, 8 U.S.C. § 1225(b) "authorizes the detention of certain [noncitizens] seeking to enter the country." *Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018). Under the "catchall" provision, 8 U.S.C. § 1225(b)(2), when an immigration officer determines that an arriving noncitizen "is not clearly and beyond a doubt entitled to be admitted" to the United States, the INA requires that the noncitizen be placed in "standard removal proceedings." *Jennings*, 583 U.S. at 281; 8 U.S.C. § 1225(b)(2)(A); *see also id.* § 1229a (standard removal proceedings). In standard removal proceedings, the noncitizen receives numerous procedural protections, such as the rights to be heard by an immigration judge, present evidence, examine evidence against him, request reconsideration or reopening of a case, and appeal decisions. *See id.* § 1229a(b)(4)(B), (c)(5)–(c)(7).

The INA provides separate procedures for a distinct form of removal—"expedited removal"—which permits the fast-tracked removal of noncitizens who meet certain statutorily-prescribed criteria (which are determined by reviewing immigration officers). *See* 8 U.S.C. § 1225(b)(1). Expedited removal procedures "appl[y] primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. Apart from consideration of requests for asylum, 8 U.S.C. § 1225(b)(1)(A)(ii), noncitizens subject to expedited removal are not afforded the procedural protections available in standard removal proceedings. *See* 8 U.S.C. § 1225(b)(1). Specifically, once "an immigration officer determines" that an applicant for admission "is inadmissible," "the officer shall order the

ORDER ON HABEAS PETITION - 3

[noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). However, if the applicant "indicates either an intention to apply for asylum … or a fear of persecution … the officer shall refer the [noncitizen] for an interview by an asylum officer[.]" 8 U.S.C. § 1225(b)(1)(A)(ii). Where the asylum officer finds a credible fear of persecution, the applicant "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But if the officer determines the applicant does not have a credible fear of persecution, the officer "shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). Noncitizens "subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).[1]

    2.   <u>Detention of noncitizens ordered removed</u>

In *Jennings v. Rodriguez*, the Supreme Court explained that "[r]ead most naturally, § 1225(b)(1) … mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. at 297. Under § 1225(b)(1), "applicants for admission" "are detained for 'further consideration of the application for asylum[.]'" *Id.* (quoting 8 U.S.C. §§ 1225(b)(1)). However, "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* Three years later, analyzing the relationship between the provisions of the INA, the Supreme Court observed that the INA's structure generally tracks "the sequential steps of the removal process." *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021). While "Sections 1221 to 1224 address the arrival" of noncitizens, "Section 1225 provides instructions for inspecting [noncitizens],

---

[1] Though applicants for admission "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit,'" *Jennings*, 583 U.S. at 288, (quoting 8 U.S.C. § 1182(d)(5)(A)), such decision is committed to the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(a) (parole requests considered by designated DHS officials, including ICE directors of field operations).

ORDER ON HABEAS PETITION - 4

expediting the removal of some, and referring others for a removal hearing … And § 1231 explains what to do if the [noncitizen] is ordered removed." *Id.* at 543–44. A year after *Guzman Chavez*, the Ninth Circuit, applying *Jennings*, explained that under the INA, "[o]nce [a noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197–98 (9th Cir. 2022).

Pursuant to § 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.* However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

//

//

//

ORDER ON HABEAS PETITION - 5

## II. ANALYSIS

### A. 8 U.S.C. § 1231(a) Governs Bhandari's Detention.

Respondents provide two documents from Bhandari's A-file: Bhandari's "Record of Deportable/Inadmissible [Noncitizen]," (*see* Dkt. No. 10-1) and an immigration judge's April 15, 2025 order affirming DHS's negative credible fear determination (*see* Dkt. No. 10-2). In relevant part, the immigration judge ordered that Bhandari's case was "returned to DHS for removal" and specified that the order was "a final order," not subject to appeal. Dkt. No. 10-2 at 3. Respondents do not argue otherwise, and in fact concede in their return that Bhandari is subject to an order of removal under § 1231. *See* Dkt. No. 8 at 1 ("[ICE] detains Petitioner Niraj Bhandari, a noncitizen subject to an administratively final order of removal, pursuant to Section 241 of the Immigration and Nationality Act ("INA")) (citing 8 U.S.C.§ 1231).

Nonetheless, Respondents argue that Petitioner is subject to detention under 8 U.S.C. § 1225(b)(1), not § 1231(a), rendering his indefinite detention argument under *Zadvydas* "irrelevant." Dkt. No. 8 at 11. Bhandari counters that he is detained under 8 U.S.C. § 1231 now that he is subject to a final removal order. Dkt No. 11 at 2–5. Although Respondents' argument would carry the day if Bhandari were still an "applicant for admission" subject to procedures governed by § 1225(b), because Bhandari is now subject to a final order of removal, § 1231(a) governs his detention. As the Ninth Circuit has observed, "[o]nce [a noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)." *Rodriguez Diaz*, 53 F. 4th at 1197; *see also Noah Zhe v. Green*, No. CV 17-7182 (KM), 2017 WL 4407934, at *2 (D.N.J. Oct. 4, 2017) ("Post-removal immigration detention is governed by 8 U.S.C. § 1231, which creates a ninety-day removal period during which the government must detain [noncitizens] still awaiting removal.").

Though Respondents cite to *Jennings* in support of their argument that § 1225, not §1231, continues to apply to Bhandari's detention, they offer no argument on this point.[2] *See* Dkt. No. 8 at 15. *Jennings* held that the six-month limitation on presumptively reasonable post-removal order detention set forth in *Zadvydas* does not apply to detention under § 1225(b)(1). But unlike Bhandari (who is subject to a non-appealable, final order of removal), the lead petitioner in *Jennings* was a noncitizen "who the Government had not yet ordered removed." *Guzman Chavez*, 594 U.S. at 548 (Thomas, J., concurring); *Jennings*, 583 U.S. at 289 (petitioner filed his habeas petition "while [he] was still litigating his removal in the Court of Appeals"). In other words, the petitioners in *Jennings* were still subject to ongoing immigration proceedings, and thus, detention, under § 1225(b).[3] Bhandari, by contrast, is no longer an "applicant for admission" subject to proceedings under § 1225(b)(1): his credible fear determination has finally been made and affirmed, and he has a final order of removal. Now that Bhandari's § 1225(b)(1) proceedings have ended, so too does his detention under § 1225(b). *See Jennings*, 583 U.S. at 297 ("Once those proceedings end, detention under § 1225(b) must end as well."); *cf. Doe v. Andrews*, 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *11 (E.D. Cal. Nov. 25, 2025) ("Here, as proceedings are still actively 'pending a final determination of credible fear of persecution,' detention of Petitioner is mandatory under the statutory text of § 1225(b)(1)(B)(ii)."); *cf. Amhirra v. Warden, Nw. Det. Ctr.*, 2:25-CV-01376-TL, 2025 WL 3718994, at *1, 4 (W.D. Wash. Dec. 23,

---

[2] In support of their argument that § 1225(b) continues to govern Bhandari's detention, Respondents cite only to a 2013 Report and Recommendation issued in the District of Arizona. Dkt. No. 8 at 15 (citing *Singh v. Holder*, CIV-13-0166-PHX-PGR (MHB), 2013 U.S. Dist. LEXIS 169715 (D. Ariz. Aug. 28, 2013)). Not only is this order non-precedential, it contains no analysis, and the proposition for which it is cited is a single sentence referencing a prior "screening" conclusion which is not memorialized. Moreover, the order was not substantively evaluated by the District Judge because it was mooted by the Petitioner's release. Finally, the order pre-dates *Jennings* and *Rodriguez-Diaz*.

[3] The class of habeas petitioners in *Jennings* included noncitizens subject to detention under § 1225(b)(1), (b)(2), and § 1226(a).

ORDER ON HABEAS PETITION - 7

2025) (analyzing petitioner's detention under § 1225(b) where the Government's "efforts to prosecute removal proceedings" were "ongoing" and no final order of removal was issued).

As one court recently observed, "Although the provisions of § 1231 might have been inapplicable while Petitioner awaited the [§ 1225(b)(1)] final determination on his credible fear assertion, once that determination occurred, there is no reason to not apply the provisions of § 1231. After all, § 1231 governs the detention, release, and removal of noncitizens who are subject to a final order of removal." *Alnajjar v. GEO Grp., Inc.*, 5:25-CV-0822-JKP, 2025 WL 3853217, at *4 (W.D. Tex. Dec. 23, 2025) (applying *Zadvydas* to habeas petitioner who was previously detained pursuant to § 1225(b)(1), then ordered removed).

In sum, the Court agrees with Bhandari that his detention is governed by § 1231.

**B.     Bhandari's Prolonged Detention is Unlawful.**

In challenging prolonged detention under § 1231, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings*, 583 U.S. at 299.

Having been detained for more than eight months since his final order of removal, Bhandari's detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Bhandari has met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Dkt. No. 11 at 4–5, 7–8 (despite attempting to remove Bhandari for months, the Government could not do so, even allowing a previously-obtained travel document to expire); Dkt. No. 5 at 7 (Bhandari asserting that, in October 2025, a deportation officer explained that Nepal was not issuing travel documents and had not done so for at least two months); Dkt.

ORDER ON HABEAS PETITION - 8

No. 5 at 6 (recent government upheaval in Nepal has resulted in its unwillingness to provide travel documents); Dkt. No. 9 ¶¶ 8–12 (describing months-long travel document request process and acknowledging, without explanation, that ICE allowed the document to expire before he could be removed to Nepal); *id.* ¶¶ 13–16 (asserting that "ICE will make flight arrangements for Petitioner's return to Nepal" but providing no updates as to whether or when its travel document request will be processed and/or approved by the Nepalese embassy). Under these circumstances, Bhandari's removal to Nepal is not reasonably foreseeable. *See Sharad K.C. v. Bondi*, C25-2071JLR, 2025 WL 3713844 (W.D. Wash. Dec. 23, 2025).

The burden thus shifts to the Government to respond with evidence sufficient to rebut Bhandari's showing. *Zadvydas*, 533 U.S. at 701. Respondents' rebuttal rests entirely on their argument that Nepal's previous issuance of a temporary travel document in October 2025—which ICE allowed to expire—supports that "Bhandari's detention is neither indefinite nor permanent." Dkt. No. 8 at 12. But as Bhandari points out, that ICE obtained a travel document, allowed it to expire, and has not since obtained a new travel document further supports that "future lengthy detention is likely." Dkt. No. 11 at 7.

The remainder of Respondents' argument is focused on why *Zadvydas* is "irrelevant" to Petitioner's claim. Specifically, citing *Thuraissigiam*, Respondents argue that Bhandari has "no entitlement to *any* legal rights, constitutional or otherwise, other than those expressly provided by the statute." Dkt. No. 8 at 9–11 (emphasis in original) (citing *D.H.S. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). But in *Thuraissigiam*, the Supreme Court held that the Petitioner did not have a due process right to judicial review of his asylum determination. 591 U.S. at 115, 139. Here, Bhandari does not seek judicial review of his asylum claim—he seeks release from prolonged immigration detention now that he has been ordered removed. Dkt. No. 5 at 15–16, 18 (requesting the Court "Order that Respondents [] immediately release Petitioner from custody").

ORDER ON HABEAS PETITION - 9

The Government next argues that the Supreme Court "has long held that [a noncitizen] seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." Dkt. No. 8 at 11 (collecting cases). Thus, Bhandari's "Section 1225(b)(1) detention is lawful and not susceptible to the due process claims Bhandari raises." Dkt. No. 8 at 12. This argument fails in large part for the same reasons previously discussed. Because Bhandari no longer seeks admission, he is not subject to detention under § 1225(b)(1). Dkt. No. 5 at 5. Moreover, the cases the government cites concern substantive judicial review of immigration decisions or the procedures applicable to immigration proceedings, not prolonged detention after entry of a final order of removal.

Finally, even if § 1225(b)(1) still applied to Bhandari, which it does not, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *See Amhirra*, 2025 WL 3718994, at *5 (collecting cases); *see also Doe*, 2025 WL 3280777, at *12 (finding Petitioner's detention under § 1225(b) not to be indefinite, but that, "[s]hould circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome.").

In sum, Respondents have failed to rebut Petitioner's showing. Bhandari is entitled to relief under *Zadvydas*, and the Court will grant his habeas petition.

**C.     The Court Will Grant in Part Petitioner's Requests for Injunctive Relief.**

Bhandari also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a third country, or if the Government re-detains him. Dkt. No. 5 at 18–19. Specifically, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity

ORDER ON HABEAS PETITION - 10

to respond, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id.* at 18.

Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Bhandari met the standard for a permanent injunction. *See* Dkt. No. 1 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

1. <u>Respondents must comply with federal regulations in the event of re-detention.</u>

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an

ORDER ON HABEAS PETITION - 11

opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Respondents first argue that because Bhandari "admits that he is subject to mandatory detention" under "8 U.S.C. § 1225(b)(1)," "[t]he sole means of release" is temporary parole under § 1182(d)(5)(A), seemingly precluding the relief he seeks. But Bhandari never made such an admission. Indeed, his entire Petition is predicated on being subject to a final order of removal under § 1231. *See generally* Dkt. No. 5. And the Court has already found that § 1231—not § 1225(b)(1)—governs his detention.

Respondents also argue that the Court lacks jurisdiction "to hear a claim on execution of removal orders in habeas." Dkt. No. 8 at 15 (citing 8 U.S.C. § 1252(g)). The statutory bar invoked by Respondents, 8 U.S.C. § 1252(g), precludes judicial review over the Government's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C. § 1252(g). The Supreme Court has narrowly construed § 1252(g) as applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original); *see Constantinovici*, 2025 WL 2898985, at * 3 (holding § 1252(g) does not bar judicial review of "the Government's authority to re-detain [petitioner] under the post-removal detention statute without notice and an opportunity to respond"). Courts "distinguish[] between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025). Here, Bhandari does not seek judicial review of the execution of his order of removal—rather, he seeks relief in the form of an order requiring the Government to follow its own regulations governing the execution of his removal. Such relief is consistent with other courts' orders in this district.

ORDER ON HABEAS PETITION - 12

*See, e.g., Yuksek v. Bondi*, No. 2:25-cv-02555-DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (Petitioner "shall not be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. § 241.13(i)(1)"); *Uprety v. Bondi*, 2:25-CV-02443-JNW-MLP, 2026 WL 194227, at *4–5 (W.D. Wash. Jan. 26, 2026) (same).

Accordingly, in the event Respondents seek to re-detain Bhandari in the future, they must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

2. <u>Bhandari is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal.</u>

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen*, 796 F. Supp. 3d at 739.

Against this legal backdrop, Bhandari requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal if he has a fear of persecution or torture in that country in reopened removal proceedings. Dkt. No. 5 at 18. In support, Bhandari cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard." Dkt. No. 5 at 13–14. Respondents do not explicitly oppose Bhandari's request for notice, or for reopened removal proceedings, but instead argue that Bhandari's claims regarding third-country removal are too speculative. Dkt. No. 8 at 13–14.

First, Bhandari's claims are not speculative. He has pleaded facts regarding the implementation of the Government's third-country removal policy that Respondents do not address. Dkt. No. 5 at 11–14. Moreover, as this Court has previously observed, without a requirement that ICE notify Bhandari of its intent to remove him to a third country and the guarantee of a meaningful opportunity to respond, he could be put on a plane without being told where he is going and forever lose the opportunity to express a reasonable fear of persecution or torture or seek judicial intervention. Such removals have been well-documented by the courts and the press. *See e.g.*, *Nguyen*, 796 F. Supp. 3d at 733–74 (collecting cases); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *9 (W.D. Wash. Dec. 23, 2025) (discussing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)).

Second, Respondents cite the July 9, 2025 ICE policy memo in support of their promise to provide sufficient notice in advance of any third-country removal. Dkt. No. 8 at 13. As this Court and numerous others have consistently held, the procedures set forth in the ICE policy memo fall well short of what the *Aden* court and others in this district have found due process and the INA require. Thus, the Court will grant Bhandari's request for relief. Should Respondents take steps to remove him to a country other than Nepal, they must provide him with written notice of their

ORDER ON HABEAS PETITION - 14

intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an IJ under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

       3.   <u>Bhandari's request to enjoin third-country removal is denied without prejudice.</u>

Bhandari argues that ICE's third-country removal policy is punitive such that it violates his Fifth and Eighth Amendment rights and seeks to enjoin the Government from removing him to any third country on that basis. Dkt. No. 5 at 17–19. As noted above, numerous courts, including this one, have held the Government's third-country removal policy does not comport with due process. *See, e.g., Kumar, 2025 WL 3204724*, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The Government does not address this growing body of legal authority, nor does it dispute the underlying factual allegations supporting it. Instead, Respondents argue that Bhandari has pleaded insufficient facts to support either a facial or as-applied challenge to the government's third-country removal policy. Dkt. No. 8 at 13–14.

The Court agrees with Respondents that the present record does not support such a broad injunction. Rather, as detailed above, this order requires the Government to provide Petitioner with due process in effectuating any future third-country removal. As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time. Nothing in this order prevents Petitioner from pursuing additional relief if warranted by

future events. *See Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026).

### III.  CONCLUSION

The Court GRANTS Bhandari's habeas petition. Dkt. No. 5.

1. Respondents are ORDERED to immediately release Bhandari from custody and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2. It is further ORDERED that if Respondents take steps to remove Bhandari to a country other than Nepal, they must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. Within **FORTY-EIGHT (48)** hours of this order, Respondents must provide the Court with a declaration confirming that Bhandari has been released from custody.

Dated this 10th day of February, 2026.

Kymberly K. Evanson
United States District Judge